UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CHRISTIE LAGERA,

        Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

No.  2:24-cv-3688 AC

ORDER

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-34, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381-1383f.[1]

For the reasons that follow, the court will GRANT plaintiff's motion for summary judgment and DENY the Commissioner's cross-motion for summary judgment.

/////

---

[1]  DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and who suffer from a mental or physical disability.  42 U.S.C. § 423(a)(1); Bowen v. City of New York, 476 U.S. 467, 470 (1986).  SSI is paid to financially needy disabled persons.  42 U.S.C. § 1382(a); Washington State Dept. of Social and Health Services v. Guardianship Estate of Keffeler, 537 U.S. 371, 375 (2003) ("Title XVI of the Act, § 1381 et seq., is the Supplemental Security Income (SSI) scheme of benefits for aged, blind, or disabled individuals, including children, whose income and assets fall below specified levels . . .").

1

## I. PROCEDURAL BACKGROUND

Plaintiff applied for disability insurance benefits and for supplemental security income on November 22, 2019. Administrative Record ("AR") 321, 330.[2] The disability onset date for both applications was alleged to be November 17, 2011. AR 323, 330. The applications were disapproved initially and on reconsideration. AR 138, 139, 198, 199. On August 16, 2021, ALJ Matilda Surh presided over the hearing on plaintiff's challenge to the disapprovals. AR 54-74 (transcript). Plaintiff appeared with her counsel, Roopen Parekh, and testified at the hearing. AR 54. Vocational Expert Martin Brodwin also testified. Id. ALJ Surh held a supplemental hearing on December 6, 2021, at which plaintiff again appeared with her attorney and a new vocational expert, Alan Ey, testified. AR 34-53.

On January 13, 2022, the ALJ issued an unfavorable decision, finding plaintiff "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d), and Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A). AR 12-33. On October 25, 2022, after receiving a Request for Review of Hearing as an additional exhibit, the Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. AR 1-5 (decision).

Plaintiff then filed a civil action in this court, and the case was remanded by stipulation to the Commissioner on July 5, 2023. AR 2232-2234. The Appeals Council issued its subsequent remand order on December 11, 2023. AR 2240-2244. A different ALJ, Vincent Misenti, held a new hearing on September 17, 2024. AR 2170-2199. Plaintiff appeared with a new attorney, Elizabeth Gade, and impartial vocational expert Nathaniel Hurdle also appeared. AR 2170. The ALJ noted that plaintiff amended the disability onset date to July 1, 2017, on the advice of counsel. AR 2146. On November 4, 2024, ALJ Misenti issued an unfavorable decision. AR 2143-2169. The ALJ's decision became the final decision of the Commissioner when plaintiff decided not to file written exceptions and the Appeals Council decided not to review the case on their own. AR 2144.

/////

---

[2]  The AR is electronically filed at ECF No. 10.

2

Plaintiff filed this action on December 24, 2024.  ECF No. 1; see 42 U.S.C. §§ 405(g), 1383c(3).  The parties consented to the jurisdiction of the magistrate judge.  ECF No. 9.  The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been fully briefed.  ECF Nos. 11 (plaintiff's summary judgment motion), 13 (Commissioner's summary judgment motion), 14 (plaintiff's reply).

## II.  FACTUAL BACKGROUND

Plaintiff was born in 1983 and accordingly was 33 years old when she filed her application for disability, making her a "younger person" under the regulations.  AR 323; see 20 C.F.R §§ 404.1563, 416.963 (same).  Plaintiff has a high school education.  AR 366.

## III.  LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards."  Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003).  "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'"  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance."  Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted).  "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice."  Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion."  Desrosiers v. Secretary of HHS, 846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

/////

3

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## IV.  RELEVANT LAW

Disability Insurance Benefits and Supplemental Security Income are available for every eligible individual who is "disabled." 42 U.S.C. §§ 423(a)(1)(E) (DIB), 1381a (SSI). Plaintiff is "disabled" if she is "'unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment . . ..'" Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

20 C.F.R. §§ 404.1520(a)(4)(i), (b) and 416.920(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, the claimant is not disabled.

Id., §§ 404.1520(a)(4)(ii), (c) and 416.920(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is disabled. If not, proceed to step four.

Id., §§ 404.1520(a)(4)(iii), (d) and 416.920(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

Id., §§ 404.1520(a)(4)(iv), (e), (f) and 416.920(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Id., §§ 404.1520(a)(4)(v), (g) and 416.920(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"), 416.912(a) (same); Bowen, 482 U.S. at 146 n.5. However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

## V.  THE ALJ's DECISION

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.

> 2. [Step 1] The claimant has not engaged in substantial gainful activity since June 1, 2014, the amended alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*)

> 3. [Step 2] The claimant has the following severe impairments: obesity; lumbar spine disorder with radiculopathy status post surgeries; cervical spine disorder with radiculopathy; bilateral knee disorder status post surgeries; bilateral plantar fasciitis; anxiety; and depression (20 CFR 404.1520(c) and 416.920(c)).

/////

4. [Step 3] The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. [Preparation for Step 4] After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), but she requires a cane for long-distance ambulation and ambulation on uneven terrain. She is limited to only occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling. She cannot climb ladders or scaffolds. She is limited to no more than frequent handling with the bilateral upper extremities. She is limited to understanding, remembering, and carrying out simple tasks.

6. [Step 4] The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7. [Step 5] The claimant was born [in 1983] and was 27 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. [Step 5, continued] The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. [Step 5, continued] Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968)

10. [Step 5, continued] Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 1, 2017, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

AR 2148-60.

As noted, the ALJ concluded that plaintiff was "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d), and Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A).  AR 2160.

## VI.  ANALYSIS

Plaintiff alleges that the ALJ erred by (a) improperly discounting her allegations of pain and physical dysfunction, and (b) failing to properly evaluate several physician opinions.  ECF No. 11 at 5-19.  The Commissioner opposes plaintiff's allegations.  ECF No. 13 at 6-18.

6

A. Plaintiff's Subjective Testimony

Plaintiff contends that the ALJ erred by failing to provide clear and convincing reasons for discounting her subjective testimony. ECF No. 11 at 9. At her August 16, 2021 administrative hearing, plaintiff testified that she was unable to work due to her spinal injury, nerve damage, knee injuries, and foot injuries. AR 61. She testified that her injuries prevented her from sitting or standing for long periods, and that when she did attempt to work, she was rushed to the hospital, and her doctor told her "no more." Id. At her September 17, 2024 administrative hearing, plaintiff testified that she still had muscle spasms and pain in her back and numbness and tingling in her legs and toes. AR 2176-2177. Plaintiff testified that even with her medication, her pain was rated at a 6 or 7 out of 10. AR 2177. Plaintiff testified that her knee dysfunction was not fully resolved following her knee surgeries, and that she had remaining pain and numbness. AR 2178.

With respect to functional limitations, plaintiff testified that she was able to sit for 10 to 15 minutes; stand for 10 to 15 minutes before having to rest for 2-5 minutes; and walk for 10 minutes. AR 2182-2183. She testified that she was able to lift 10 pounds. AR 2184. She testified that she can grocery shop, cook, sweep, mop, put laundry in the wash, drive, and go to the gym for water therapy. AR 2185-86. Her son helps her with making beds, folding laundry, and dusting. Id. As to mental health impairments, plaintiff testified that she has anxiety and depression, but last saw a therapist regularly over a year before the 2024 hearing. AR 2189. Plaintiff testified she would miss one day a week of work due to her mental and physical impairments. AR 2193.

Evaluating the credibility of a plaintiff's subjective testimony is a two-step process. First, the ALJ must "determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged...[plaintiff] need only show that it could reasonably have caused some degree of the symptom." Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014) (internal citations omitted). Objective medical evidence of the pain or fatigue itself is not required. Id. If there is objective medical evidence of impairment, the ALJ then may consider the nature of the symptoms

7

alleged, including aggravating factors, medication, treatment and functional restrictions.  Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc).

Second, if the ALJ does not find evidence of malingering, the ALJ may only reject the claimant's testimony by offering "specific, clear and convincing reasons for doing so."  Id. (internal citations omitted).  The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the applicant's daily activities.  Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).  Work records, physician and third-party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant.  Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997).

Here, the ALJ found, and the parties do not dispute, that plaintiff presented medical evidence of underlying impairments that could have caused some degree of the alleged symptoms, and the Commissioner does not assert that plaintiff is malingering.  AR 2154.  The ALJ discounted plaintiff's subjective statements citing objective medical evidence, including improved symptoms following surgeries, mild findings on mental limitations testing, plaintiff's success at managing pain with medication, and plaintiff's activities of daily living.  AR 2154-59.

The ALJ discounted plaintiff's physical limitations testimony by citing a record of symptom improvement after two lumbar spine surgeries in November 2013 and March 2019.  AR 2154, 676, 686, 1140, 1166, 1177, 1189.  The ALJ referenced a February 2024 MRI of the lumbar spine showing L3-4 disc bulge with foraminal stenosis compromising the L3 nerve roots but noted that further surgery was not required.  AR 2154, 2953.  The ALJ also pointed to records following plaintiff's 2021 total knee replacement, stating that treatment notes indicated her bilateral knee function had improved and that she generally did not need an assistive device for ambulation post-surgery.  AR 2154, 2413-15, 2419-20.

Plaintiff argues that the ALJ's characterization of the medical record is inaccurate, and that the records that the ALJ himself cited to does not show improvement post-surgery.  In sum, according to plaintiff, the ALJ's finding that plaintiff's pain and physical dysfunction resolved

8

after her surgeries is belied by the very records the ALJ refers to, including the updated diagnostic imaging from 2024 which shows disc bulges compressing/encroaching on the nerve roots at L3 and C7.  AR 483, 2951, 2953.  Plaintiff also argues that the objective medical evidence discussed by the ALJ, which included ongoing abnormal range of motion in her lumbar and cervical spine, positive straight leg raise testing, reduced sensation along the L5 nerve distribution, and reduced lower extremity strength, all occurred after plaintiff's 2019 back surgery and all supported continued pain and dysfunction.  ECF No. 11 at 12.

The court's review of the administrative record reveals inconsistencies in plaintiff's reports of pain and in objective findings, particularly after plaintiff's surgeries.  For example, plaintiff cites post-operative notes from the Valley Orthopedic clinic dated November 17, 2021, which show that plaintiff presented with postoperative pain and an antalgic gait requiring a walker.  AR 2435.  This same record reflects that plaintiff was doing well postoperatively, denied numbness or tingling, and was preparing to start physical therapy.  Id.  A record from the same clinic dated January 19, 2022, states that plaintiff's right knee stiffness had improved, and that she had a non-antalgic gait with full sensation and full range of motion.  AR 2433.  The ALJ is responsible for resolving evidentiary ambiguities.  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).  "When the evidence before the ALJ is subject to more than one rational interpretation, [the court] must defer to the ALJ's conclusion."  Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1198 (9th Cir. 2004).  Accordingly, the undersigned does not find error in the ALJ's interpretation of the medical evidence as undercutting plaintiff's subjective statements.

However, the court agrees with plaintiff that the ALJ should have considered whether she was disabled for a specific period prior to her surgeries.  ECF No. 11 at 12-13.  The Commissioner did not respond to this argument.  ECF No. 13.  Plaintiff alleged disability beginning July 1, 2017.  AR 2146.  Plaintiff's second lumbar spine surgery occurred in 2019, and her bilateral knee replacement occurred in 2021.  AR 2154-55.  Nearly all of the medical evidence relied on by the ALJ comes from the record taking place after these surgeries occurred. Id.  The Ninth Circuit has held that where evidence indicates that a claimant may have had more

severely limiting symptoms during a certain finite period within the claimed disability period, the ALJ must consider whether the claimant was "disabled for a qualifying portion of the time from [the] alleged onset date, even if not for the full period." Smith v. Kijakazi, 14 F.4th 1108, 1114 (9th Cir. 2021).  The ALJ's reliance on post-surgical findings fails to acknowledge that there is more than a 12-month period in the claimed disability period in which plaintiff's limitations could have been more significant.  Accordingly, the undersigned concludes that the ALJ "erred by seeking only to reach a single disability determination for the entire multi-year period, thereby failing to consider whether [plaintiff] was disabled for only a qualifying, early portion of that time." Smith, 14 F.4th at 1116.[3]

   B.  Physician Opinion Testimony

Plaintiff challenges the ALJ's treatment of multiple physicians.  First, the plaintiff challenges the ALJ's decision to discredit the opinions of Lauri Stenbeck, Psy.D., Les Kalman, M.D., and her treating therapist Dan A. Wilson, LCSW.  ECF No. 11 at 14-25.  Second, plaintiff contends that the ALJ improperly failed to consider the opinions of treating physical therapists Charles Brandhorst, DPT, and Brijpal Pataria, DPT.  Id.

   1. The Medical Opinion Evidence

The ALJ evaluated the medical opinions of A. Khong, M.D., a state agency medical consultant; G. Taylor, M.D., a state agency medical consultant; Cynthia Lindsey, Psy.D. and Tawnya Brode, Psy.D., State agency psychological consultants; Leslie E. Montgomery, Ph.D., a state agency psychological consultant; Lauri Stenbeck, Psy.D., who conducted the mental consultative examination on April 25, 2018; Les Kalman, M.D., who conducted the mental consultative examination on March 6, 2020; and Dan A. Wilson, plaintiff's treating therapist.  AR 2157-58.  The ALJ did not identify any medical opinions from physical therapists Brandhorst to Pataria.  Id.

---

[3] The ALJ's other rationales for discounting plaintiff's subjective testimony do not undermine this conclusion.  That plaintiff's symptoms were helped with medication and physical therapy as of her recent medical history or that her current activities of daily living were not consistent with her pain testimony does not undercut the fact that plaintiff may have been more limited in activities and less assisted by medication prior to her surgeries.

10

The ALJ credited the medical opinions of state agency consulting psychologists Dr. Lindsey and Dr. Brode, characterizing them as finding that plaintiff had no significant mental limitations. AR 2147. On May 15, 2018, Dr. Lindsey issued an opinion stating that due to limited evidence, plaintiff's functioning could not be fully assessed and concluded that plaintiff's "mental impairments are not considered severe." AR 84. On July 7, 2020, Dr. Brode likewise concluded that plaintiff had no severe impairment. AR 157. The ALJ found these opinions largely persuasive due to their support in the medical evidence, which the ALJ stated is characterized by generally adequate mental functioning. AR 2157, citing AR 643-647 (psychiatric consultation report by Dr. Lauri Stenbeck), 654-1504 (non-psychiatric outpatient hospital records), 1709 (psychiatric consultation report by Dr. Les Kalman), 1717-1763 (non-psychiatric outpatient hospital records), 1764-1811 (medical record from Dignity Health), 1825-1839 (medical record from Dignity Medical Group), 1840-1952 (non-psychiatric outpatient hospital records), 1953-1997 (mental health related medical records), 2060-2085 (non-psychiatric hospital records), 2086-2088 (medical source statement of Dan A. Wilson, LCSW), 2091-2105 (orthopedic medical records), 2411-2453 (physical therapy records), 2478-2522 (pain clinic records), and 2918-2960 (primary care office treatment records).

Further, the ALJ found the opinions supported by plaintiff's admission that she had not seen a therapist for over one year and was no longer taking psychotropic medications. AR 2189. The ALJ found there was little evidence that she has had difficulty obtaining treatment as necessary and noted she has not required psychiatric hospitalization and has generally denied suicidal plans and intent. Id., citing AR 646 (denying suicidal ideation) and 1710 (denying past hospitalizations). The ALJ also found the lack of mental impairment consistent with plaintiff's activities of daily living, which "indicate some mental capacity." AR 2148.

In contrast, the ALJ discredited state agency consulting psychologist Dr. Montgomery, who found that plaintiff had moderate limitations in concentrating, persisting, and maintaining pace and was limited to an ordinary routine with minimal changes or adaptations to usual job duties. AR 107-120, 134-35. He also discounted the opinion of Lauri Stenbeck, Psy.D., who conducted the mental consultative examination of plaintiff on April 25, 2018, and found that

11

plaintiff had a moderately limited ability to complete a normal workday or workweek and deal with usual work stress. AR 643-647. The ALJ likewise discounted the opinion of Les Kalman, M.D., who conducted a mental consultative examination on March 6, 2020, and concluded that the plaintiff was limited to simple, 1-2 step instructions. AR 1708-1714. The ALJ found that each of these opinions understated the claimant's mental capacity and were inconsistent with the medical record, citing and referring back to the same records and rationale that he used to find the opinions of Drs. Lindsey and Brode persuasive.

Plaintiff's treating therapist Dan A. Wilson stated on August 13, 2021, that the claimant would have significant difficulties with personal affairs, could handle only limited social interactions, would have difficulty completing tasks, and would experience increased mental symptoms at work. 2086-2088. The ALJ found this opinion "not persuasive for the same reasons provided above for the opinions of Dr. Montgomery, Dr. Stenbeck, and Dr. Kalman." AR 2158. The ALJ noted in addition that Dr. Wilson's report was vague and ambiguous, did not include vocational terms, and contained virtually no psychological testing. AR 2158.

2. Standards for ALJ's Evaluation of Medical Opinion Evidence

In evaluating medical opinion evidence, ALJs give no specific evidentiary weight to any particular type of opinion or source but instead must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources and evaluate their persuasiveness. Revisions to Rules, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; see 20 C.F.R. § 404.1520c(a) and (b). The factors for evaluating the persuasiveness of a physician opinion include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements"). 20 C.F.R. § 404.1520c(c)(1)-(5). Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered. 20 C.F.R. § 404.1520c(b)(2).

12

Supportability and consistency are defined in the regulations as follows:

> Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2). The ALJ may, but is not required to, explain how the other factors were considered. 20 C.F.R. § 404.1520c(b)(2).

The Ninth Circuit has confirmed that the new regulatory framework adopted in 2017 eliminates the old "treating physician rule" and displaces the longstanding case law requiring an ALJ to provide "specific and legitimate" or "clear and convincing" reasons for rejecting a treating or examining doctor's opinion. Woods v. Kijakazi, 32 F.4th 785 (9th Cir. 2022). Still, in rejecting any medical opinion as unsupported or inconsistent, an ALJ must provide an explanation supported by substantial evidence. Id. In sum, the ALJ "must 'articulate ... how persuasive' [he or she] finds 'all of the medical opinions' from each doctor or other source ... and 'explain how [he or she] considered the supportability and consistency factors' in reaching these findings." Id. (citing 20 C.F.R. §§ 404.1520c(b), 404.1520(b)(2)).

3. The ALJ Erred in Evaluating the Medical Opinions

The ALJ erred by failing to provide supported reasons for discounting the medical opinions of Drs. Steinbeck, Kalman, and Wilson. As discussed above, when evaluating a medical opinion, an ALJ must articulate how persuasive he or she found the opinion considering the supportability and consistency factors. See 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ must also provide a well-supported explanation for discounting the work restrictions assessed therein. See Woods, 32 F.4th at 792.

Here, the ALJ's treatment of the physician opinions is not supported by substantial evidence because the ALJ's reliance on the record is overly broad, conclusory, and circular. Id. In crediting the opinions of Dr. Lindsey and Dr. Brode regarding plaintiff's mental functioning,

13

the ALJ cites generally to large swaths of the medical record, most of which is irrelevant to opinions actually provided.  AR 2157.  Moreover, in crediting Drs. Lindsey and Bode, the ALJ cites without explanation the consultation records of the physicians he went on to discredit, including the reports of Drs. Steinbeck, Kalman, and Wilson.  AR 2157, citing AR 643-647 (psychiatric consultation report by Dr. Lauri Stenbeck), 1709 (psychiatric consultation report by Dr. Les Kalman), and 2086-2088 (medical source statement of Dan A. Wilson, LCSW).  The ALJ then goes on to discredit Drs. Montgomery, Kalman, Stenbeck, and Wilson by referring back to his decision to credit Lindsey and Bode.  Supplemental rationales provided by the ALJ for discrediting the opinion evidence are cursory and cannot support the weight of the ALJ's conclusions.  The ALJ's reasoning is conclusory and circular, and is not substantially supported by the record.  Accordingly, the ALJ erred in evaluation of the medical opinion statements of Drs. Steinbeck, Kalman, and Wilson.

> 4.  The ALJ did Not Err in Evaluating the Statements of Physical Therapists

Plaintiff argues that the ALJ failed to properly assess the medical opinions of treating physical therapists Charles Brandhorst and Brijpal Pataria, citing medical records from the physicians.  ECF No 11 at 14.  The court agrees with the Commissioner that this argument is misplaced because neither physical therapist submitted actual medical opinion evidence.  A "medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the abilities listed in" other sections of the regulations.  20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2).  The records plaintiff refers to are more properly categorized as "[o]ther medical evidence" under the revised regulations.  20 C.F.R. §§ 404.1513(a)(3), 416.913(a)(3) ("Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis.").  There is no requirement that the ALJ discuss "other medical evidence" like Drs. Brandhorst and Pataria's treatment notes.  The ALJ's discussion of their statements was consistent with and sufficient under the revised regulations.

14

VII.  REMAND

The undersigned agrees with plaintiff that the ALJ's error is harmful and remand for further proceedings by the Commissioner is necessary.  An error is harmful when it has some consequence on the ultimate non-disability determination.  Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006).  The ALJ's error in this matter was harmful; plaintiff's subjective testimony and the medical opinion evidence, properly considered, may very well result in a more restrictive residual functional capacity assessment, which may in turn alter the finding of non-disability.

It is for the ALJ to determine in the first instance whether plaintiff has severe impairments and, ultimately, whether she is disabled under the Act.  See Marsh v. Colvin, 792 F.3d 1170, 1173 (9th Cir. 2015) ("the decision on disability rests with the ALJ and the Commissioner of the Social Security Administration in the first instance, not with a district court").  "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004).  Here, the ALJ failed to properly consider plaintiff's testimony.  Further development of the record consistent with this order is necessary, and remand for further proceedings is the appropriate remedy.

VIII.  CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 11), is GRANTED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 13), is DENIED;

3. This matter is REMANDED to the Commissioner for further consideration consistent with this order; and

4. The Clerk of the Court shall enter judgment for plaintiff and close this case.

DATED: March 4, 2026.

`

_Allison Claire_
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

15